## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| RICHARD BUTLER, by his next friend ) <br> SHAWNTELL DAVIS, ) <br> ) <br>     Plaintiff, ) <br> ) <br>     v. ) <br> ) <br> JO ANNE B. BARNHART, ) <br> Commissioner of the Social Security ) <br> Administration, ) <br> ) <br>     Defendant. ) | No. 06 C 3571 <br> Wayne R. Andersen <br> District Judge |

### MEMORANDUM OPINION AND ORDER

This case is before the court on the parties' cross-motions for summary judgment.
For the reasons stated below, defendant Jo Anne Barnhart's motion is denied and
plaintiff Richard Butler's motion is granted in part. This case is hereby remanded for
proceedings consistent with this order.

### BACKGROUND

Plaintiff Richard Butler ("Butler") filed his initial application for Supplemental
Security Income benefits on January 27, 2003. At the time of his application, Butler was
six years old. Butler alleges that he suffers from Attention Deficit Hyperactivity Disorder
("ADHD"), Dysthymic Disorder, Discipline Behavior Disorder, Post-Traumatic Stress
Disorder, a Learning Disability, and an Anxiety Disorder.

Butler's application was denied initially and on reconsideration. Butler appealed,
and he had a hearing before an Administrative Law Judge on May 4, 2005. The
Administrative Law Judge issued a decision dated July 1, 2005, affirming the denial of

Supplemental Security Income benefits. The Administrative Law Judge found that Butler had a severe learning disorder, but that Butler's impairment did not meet, medically equal, or functionally equal the criteria of an impairment in the Listing of Impairments. Butler appealed that denial to the Appeals Council. On May 3, 2006, the Appeals Council denied his request for review and adopted the decision of the Administrative Law Judge denying Supplemental Security Income benefits as the final decision of the Commissioner. Plaintiff now appeals that decision to this court.

The earliest evidence of Butler's medical condition contained in the Administrative Record is a psychological consultative examination performed on March 22, 2003, by Dr. Nicholas D. Kokonis for the Illinois Bureau of Disability Determination Services. Dr. Kokonis found that Butler had a verbal IQ of 90, at the 25th percentile, a performance IQ of 84, at the 14th percentile, and a full scale IQ of 86, at the 18th percentile. Butler was subsequently seen by two psychologists at the request of the Illinois Bureau of Disability Determination Services. The first evaluation took place on April 8, 2003, and the second on August 8, 2003. Both psychologists determined that Butler had a marked limitation in the domain of Attending and Completing Tasks.

On September 29, 2003, Dr. Harlan G. Alexander, a psychiatrist, examined Butler, diagnosed him with an impulse control disorder with intermittent explosive disorder, and prescribed Risperdal, an antipsychotic. Butler was again seen by Dr. Alexander on January 29, 2004, at which time the dosage of Risperdal was increased.

On January 3, 2005, Butler met with Dr. Michelle L. Iyamah, a clinical psychologist at the Beacon Therapeutic Diagnostic and Treatment Center. Dr. Iyamah

diagnosed Butler with Dysthymic Disorder, Pyromania, Post Traumatic Stress Disorder, Reading Disorder, and Disorder of Written Expression.

Following a psychological evaluation of Butler, Dr. Iyamah found that Butler had a full scale IQ of 86, at the 18th percentile rank. Dr. Iyamah's results also indicated that Butler was in the low-average range in verbal comprehension, working memory, and visual spatial skills. Although Butler was in third grade at the time of the evaluation by Dr. Iyamah, Butler's reading and spelling skills were at the first grade level, and his arithmetic was at the second grade level.

In a medical questionnaire, dated March 1, 2005, Dr. Iyamah indicated that Butler meets Listing 112.11, ADHD, with marked inattention, marked impulsiveness, and marked hyperactivity, as well as marked impairments in the functional domains of Acquiring and Using Information, Moving About and Manipulating Objects, as well as extreme impairments in the functional domains of Interacting and Relating with Others, and Personal Care. Dr. Iyamah also indicated that Butler meets Listing 112.06, Anxiety Disorder, with recurrent obsessions or compulsions which are a marked source of distress, and recurrent intrusive recollections of a traumatic experience, including dreams.

On December 22, 2004, Butler was examined by Dr. Bhaskar Sripada, a child psychiatrist at the Beacon Therapeutic Diagnostic and Treatment Center. Dr. Sripada diagnosed Butler with ADHD and prescribed the medication Adderall. Dr. Sripada next saw Butler on March 8, 2005, and on that day completed a medical questionnaire. In the questionnaire, Dr. Sripada indicated that Butler meets Listing 112.06, Anxiety Disorder. In addition, Dr. Sripada found that Butler has marked impairments in the functional domains of Acquiring and Using Information, Moving about and Manipulating Objects,

Interacting and Relating with Others, and extreme limitations in the functional domains of Personal Care, as well as Attending and Completing Tasks.

Dr. Sripada next saw Butler on April 6, 2005, at which time Dr. Sripada discontinued Butler's Adderall prescription and instead prescribed Tenex. Butler met again with Dr. Sripada on May 12, 2005. On that date, Dr. Sripada recommended that the Tenex prescription be continued.

Butler was in third grade at the time of the hearing before the Administrative Law Judge. David Becker, Butler's first grade teacher, completed a teacher questionnaire form dated February 17, 2003. In that questionnaire, Mr. Becker indicated that Butler's academic achievement was not yet at a first grade level and that Butler was having serious academic problems, but reported that Butler got extra help each day. Butler's second grade teacher also completed a questionnaire, dated May 13, 2004. That questionnaire revealed that Butler "does not stay focused or on task" and "usually needs repeated directions."

An individualized education program was drawn up for Butler on June 13, 2005, at the end on his third grade year. Butler's overall abilities were in the extremely low range, and his adaptive behaviors were far below age level. The program indicated that Butler required specialized instruction and/or related services in four of the five academic areas listed. The program also indicated that Butler was able to comprehend work at a kindergarten-to-first-grade level, that his vocabulary was below first grade level, and that he was working at a kindergarten-to-first-grade level in mathematics. Regular education and resource programs were considered and rejected, and it was determined that Butler

would be assigned to self-contained special education classes for all academic areas, and that he was to receive thirty minutes per week of social work services.

The parties have now filed cross-motions for summary judgment. Barnhart's motion asks this court to affirm the Administrative Law Judge's order denying Butler benefits. Butler's motion seeks an order reversing the denial of his benefits, thereby finding him disabled and eligible for such benefits as of March 1, 2005. In the alternative, Butler requests that this case be remanded to the Administrative Law Judge for further proceedings pursuant to Fed. R. Civ. P. 56 and 42 U.S.C. §405(g).

## DISCUSSION

### A. Legal Standard

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A decision by an Administrative Law Judge becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Judicial review is limited to determining whether the Administrative Law Judge applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although we review "the entire record to determine if there is relevant evidence adequate to support the [Administrative Law Judge's] conclusion, we do not decide the facts anew, reweigh evidence, or substitute our judgment for that of the [Administrative Law Judge." *Kepple v. Massanari,* 268 F.3d 513, 516 (7th Cir.2001). A district court

5

must affirm the Administrative Law Judge's decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may support the claimant's position. *Wolfe,* 997 F.2d at 326. However, when the Administrative Law Judge's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

**B.    *Standards for Making a Disability Determination and the Administrative Law Judge's Ruling***

Under the Personal Responsibility and Work Opportunity Reconciliation Act, a child is disabled if he or she has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The Social Security Administration employs a three-step analysis to decide whether a child meets this definition. 20 C.F.R. § 416.924(a). First, if a child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment, or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent to, any of the Listings of Impairments contained in 20 CFR pt. 404, subpt. P, App. 1 (the "Listings"). *Id.*

To find an impairment functionally equivalent to one in the Listings, an Administrative Law Judge must analyze its severity in six age-appropriate categories: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for one's self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a). The Administrative

6

Law Judge must find an extreme limitation in one category or a marked limitation in two categories or more in order to find a child disabled. 20 C.F.R. § 416.926a(d). An extreme limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). A marked limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

In this case, the Administrative Law Judge first concluded that Butler has never engaged in substantial gainful activity. At the second step, the Administrative Law Judge found that Butler has a severe impairment of a learning disability. At the third step, the Administrative Law Judge found that Butler did not have an impairment, or combination of impairments, that meets, medically equals, or functionally equals any Listing, and that Butler was not disabled for purposes of eligibility for Supplemental Security Income benefits. Specifically, the Administrative Law Judge found that Butler had no extreme limitations in any domains and that Butler had a marked limitation only in his ability to acquire and use information related to his learning disorder, but not in any other domains.

Butler argues that the Administrative Law Judge improperly substituted her opinion for those of independent medical professionals by finding that Butler did not have an impairment that was functionally equivalent to any Listing. We disagree. An Administrative Law Judge does not have to address every piece of evidence in her decision. *Sims v. Barnhart,* 309 F.3d 424, 429 (7th Cir.2002). Rather, the Administrative Law Judge need only build "a bridge from the evidence to [her] conclusion." *Green v. Apfel,* 204 F.3d 780, 781 (7th Cir.2000). Here, the Administrative Law Judge based her conclusions on relevant evidence found in the medical and school records, as well as in

7

the testimony of Butler and Butler's mother. Specifically, the Administrative Law Judge found that the opinions of Dr. Iyamah and Dr. Sripada regarding the degree of Butler's functional limitations, reached after only one or two visits to each respective doctor, were not well supported by their narrative reports or by their contemporaneous progress notes, and instead seemed to be based primarily on the reports of Butler's mother. The record supports this conclusion.

## C. The Administrative Law Judge had substantial evidence to conclude that Butler did not have an impairment that functionally equals any Listing.

We also find that the record supports the Administrative Law Judge's opinions with respect to each of the six domains at the functional equivalent stage of her analysis. With respect to the first domain, acquiring and using information, the Administrative Law Judge found that Butler had a marked limitation related to his learning disorder. She based this finding on Butler's medical and school records, which demonstrated Butler's slow academic progress and significant delay in learning. Butler does not contest the Administrative Law Judge's findings in this domain and we agree that there is substantial evidence in the record to support the Administrative Law Judge's finding with respect to this domain.

The second domain, attending to and completing tasks, refers to how well a child is able to focus and maintain attention. The Administrative Law Judge found that Butler's limitations in this domain were less than marked and occurred almost exclusively in the school or homework settings. Significantly, the Administrative Law Judge found that Butler had good ability to focus on more pleasurable activities, such as playing video games, and had been described by both psychologists who tested him as having at least adequate to good ability to concentrate and persist throughout the

8

extensive testing sessions. We find that this evidence is precisely the kind that "a reasonable mind might accept as adequate to support [the Administrative Law Judge's] conclusion." *See Richardson,* 402 U.S. at 401.

The third domain is interacting and relating to others. This domain measures how well a plaintiff initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others. The Administrative Law Judge found that Butler's behavior at school had been consistently described by his teachers as good and that he was obedient and respectful to adults. Although Butler apparently fought with his little sister, the record is devoid of any evidence demonstrating that he had been disciplined, suspended, or expelled from school, or that he had ever been in serious trouble with the police or neighbors at home. We find that the record supports the Administrative Law Judge's conclusion that Butler has no marked or extreme limitation in this domain.

The fourth domain, moving about and manipulating objects, measures how well a child moves his body from one place to another and moves and manipulates things. The Administrative Law Judge explained that children of Butler's age should be able to move at an efficient pace and should demonstrate increasing strength and coordination in a variety of physical activities like running, jumping, throwing, kicking, catching and hitting balls, and that they should be able to use many kitchen and household tools, cut with scissors, and write. The Administrative Law Judge found that nothing in the record supported a finding that Butler had any significant motor limitations and that the bases of any such findings by Butler's doctors were unclear. According to Butler's own

testimony, he enjoyed gym class, art class, and playing video games, all of which require gross and fine motor skills. Administrative Record at page 28. There was no evidence presented by his teachers, or anyone present for those activities, that Butler had significant motor limitations. In fact, Butler's mother testified that Butler loved to run and play, and had no difficulty with fine or gross motor coordination. Administrative Record at page 20-21. Therefore, we find that the Administrative Law Judge had substantial evidence to conclude that Butler had no marked impairments in the domain of moving about and manipulating objects.

The fifth domain is the child's ability to care for himself. According to the Administrative Law Judge, children of Butler's age should be independent in most daily activities, including dressing and bathing, with some reminders for routines. As noted by the Administrative Law Judge, Butler's mother testified that Butler can dress himself, though she chooses his clothes to ensure that he wears clean clothing. In addition, the Administrative Law Judge concluded that it was normal for children of Butler's age to rush through baths and forget school materials, as the record indicates that Butler did on occasion. We agree. Therefore, we find that the Administrative Law Judge had substantial evidence to conclude that Butler had no marked impairment in the functional domain of caring for himself.

The sixth, and final domain, is health and physical well being. This domain measures the cumulative physical effects of physical or mental impairments along with their associated treatments or therapies upon a child's functioning. Things such as frequent illnesses caused by any impairment or frequent exacerbations of any impairment may be considered in this domain. The Administrative Law Judge found that Butler had

been assigned to full-time special education services for the coming school year, and has occasionally seen a psychiatrist, but that Butler had no episodic illnesses and his health and physical well-being were not otherwise significantly affected or limited by his learning disorder. The record supports this conclusion. Thus, we find that the Administrative Law Judge had substantial evidence to conclude that plaintiff had no marked impairments in the domain of health and physical well being.

Because the Administrative Law Judge's decision with respect to each of the six domains at the functional equivalent stage of analysis was supported by substantial evidence, we affirm that portion of her decision.

**D.      *The Administrative Law Judge had substantial evidence to conclude that Butler did not meet Listing 112.11, ADHD.***

Butler alleges that the Administrative Law Judge erred when she found that Butler did not meet Listing 112.11, ADHD. To meet the Listing for ADHD, a child's record must document marked limitations in attention and impulse control, and marked hyperactivity not controlled by medication. As stated above, when analyzing whether Butler had a marked impairment in the domain of attending to and completing tasks, the Administrative Law Judge found that Butler had good ability to focus on more pleasurable activities, such as playing video games, and had been described by both doctors who tested him as having at least adequate to good ability to concentrate and persist throughout the extensive testing sessions. In addition, the Administrative Law Judge noted that while Butler's teachers agreed that Butler had difficulty focusing on schoolwork, none of them reported that Butler was otherwise hyperactive or impulsive in school. To the contrary, the record indicates that Butler received good scores in conduct and had never been in trouble in school. The record further indicates that Butler did not

11

display symptoms of severe hyperactivity during the several psychiatric testing sessions. The Administrative Law Judge found that Butler's ADHD diagnosis appeared to be based primarily on the reports of Butler's mother and not on the objective record. The record supports this conclusion. Thus, we find that the Administrative Law Judge had substantial evidence to conclude that plaintiff did not meet Listing 112.11, ADHD.

**E.  The Administrative Law Judge failed to address whether plaintiff met Listing 112.06, Anxiety Disorder.**

Butler alleges that the Administrative Law Judge erred when she found that Butler did not meet Listing 112.06, Anxiety Disorder. We are unable to properly review this finding by the Administrative Law Judge because she did not articulate the basis for her conclusion. The only specific reference to Listing 112.06 by the Administrative Law Judge is found on page 4 of her opinion, where she stated that "PTSD is an anxiety disorder, evaluated under Listing 112.06." Administrative Record at page 22. The consequences of the Administrative Law Judge's decision regarding Listing 112.06 are significant in this case. Specifically, an affirmative finding that Butler meets Listing 112.06 would, in itself, qualify Butler for Supplemental Security Income childhood disability benefits. See 20 C.F.R. § 416.924(a). However, in order to provide meaningful review, it is important that we are able to trace the reasoning of the Administrative Law Judge's finding. See Steele, 290 F.3d at 940. Therefore, because the Administrative Law Judge did not articulate the basis for her finding that Butler did not meet Listing 112.06, we remand that portion of this case in order for her to address this issue and explain her reasoning. Because we refuse to affirm the Administrative Law Judge's decision in full, Barnhart's motion for summary judgment is denied.

## CONCLUSION

For the foregoing reasons, Butler's motion for summary judgment [22] is granted to the extent that we remand the case so that the Administrative Law Judge can address whether Butler meets Listing 112.06, Anxiety Disorder, and explain her reasoning. Defendant Jo Anne Barnhart's motion for summary judgment [32] is denied.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: June 25, 2008

13